**Nos. 26-2596, 26-2597, 26-2694**

**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

ABBVIE, INC., a Delaware corporation; ALLERGAN, INC., a Delaware corporation; DURATA THERAPEUTICS, INC., a Delaware corporation; ABBVIE PRODUCTS, LLC, a Georgia limited liability company; PHARMACYCLICS, LLC, a Delaware limited liability company; ALLERGAN SALES, LLC, a Delaware limited liability company,

*Plaintiffs-Appellants*,

v.

MARTY JACKLEY, in his official capacity as Attorney General of the State of South Dakota; LARRY DEITER, in his official capacity as Director of the South Dakota Division of Insurance,

*Defendants-Appellees*.

(*Additional Captions on Inside Cover*)

On Appeal from the United States District Court for the
District of South Dakota,
Nos. 3:25-cv-03006, 4:25-cv-04156, 3:25-cv-03021 (Roberto A. Lange, C.J.)

# PETITION FOR INITIAL HEARING EN BANC


MATTHEW S. OWEN
RUSSELL B. BALIKIAN
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, DC 20036
(202) 955-8500
mowen@gibsondunn.com
rbalikian@gibsondunn.com

*Counsel for AbbVie, Inc. et al.*

ALLON KEDEM
JEFFREY L. HANDWERKER
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
allon.kedem@arnoldporter.com
jeffrey.handwerker@arnoldporter.com

*Counsel for AstraZeneca Pharmaceuticals, LP*

ERIN E. MURPHY
MATTHEW D. ROWEN
PHILIP HAMMERSLEY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Pharmaceutical Research and Manufacturers of America*


August 28, 2026

26-2597

AstraZeneca Pharmaceuticals, LP

*Plaintiff-Appellant*,

v.

Marty Jackley, in his official capacity as Attorney General of the State of South Dakota; Larry Deiter, in his official capacity as Director of the South Dakota Division of Insurance,

*Defendants-Appellees.*

26-2694

Pharmaceutical Research and Manufacturers of America

*Plaintiff-Appellant*,

v.

Marty Jackley, in his official capacity as Attorney General of the State of South Dakota; Larry Deiter, in his official capacity as Director of the South Dakota Division of Insurance,

*Defendants-Appellees.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION AND RULE 40(b) STATEMENT .......... 1

ISSUES MERITING EN BANC CONSIDERATION .......... 3

STATEMENT OF THE CASE .......... 3

REASONS FOR GRANTING INITIAL HEARING EN BANC .......... 11

I. This Case Presents Exceptionally Important, Recurring Issues .......... 11

A. These Important Questions Have Divided Courts in this Circuit and Across the Country .......... 11

B. This Case Provides an Ideal Vehicle for Full Court Review .......... 13

CONCLUSION .......... 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*AbbVie Inc. v. Drummond*,
808 F.Supp.3d 1266 (W.D. Okla. 2025) ........................................................ 4

*AbbVie Inc. v. Jackley*,
2026 WL 2280929 (D.S.D. Aug. 7, 2026) ................................. 10, 12, 13, 14

*AbbVie Inc. v. Wrigley*,
832 F.Supp.3d 920 (D.N.D. 2026) ..................................................... 9, 12, 15

*AbbVie, Inc. v. Fitch*,
152 F.4th 635 (5th Cir. 2025) ..................................................................... 12

*AbbVie, Inc. v. Murrill*,
180 F.4th 747 (5th Cir. 2026) ..................................................................... 12

*Ass'n for Accessible Med. v. Ellison*,
140 F.4th 957 (8th Cir. 2025) ..................................................................... 15

*Astra USA, Inc. v. Santa Clara Cnty.*,
563 U.S. 110 (2011) ............................................................................... 3, 13

*AstraZeneca Pharms. LP v. McClain*,
2025 WL 4092197 (E.D. Ark. Sept. 30, 2025) ....................................... 12, 13

*AstraZeneca v. Bailey*,
2025 WL 644285 (W.D. Mo. Feb. 27, 2025) ................................................ 13

*Forest Park II v. Hadley*,
336 F.3d 724 (8th Cir. 2003) ....................................................................... 16

*Novartis Pharms. Corp. v. Hanaway*,
180 F.4th 1097 (8th Cir. 2026) ................................................................... 1, 7

*Novartis Pharms. Corp. v. Johnson*,
102 F.4th 452 (D.C. Cir. 2024) ...................................................................... 5

*PhRMA v. McClain*,
95 F.4th 1136 (8th Cir. 2024) ........................................................ 1, 6, 14, 15

*PhRMA v. McCuskey*,
171 F.4th 675 (4th Cir. 2026) ........ 12, 15

*PhRMA v. McCuskey*,
176 F.4th 830 (4th Cir. 2026) ........ 12

*Sanofi Aventis U.S. LLC v. HHS*,
58 F.4th 696 (3d Cir. 2023) ........ 3, 5

*United States v. Washington*,
596 U.S. 832 (2022) ........ 9, 15

**Statutes**

42 U.S.C. §256b(a)(5) ........ 4

42 U.S.C. §256b(d)(3) ........ 4

Ark. Code §23-92-604(c) ........ 5, 6

Minn. Stat. §62J.96 ........ 5

Mo. Rev. Stat. §376.414.2 ........ 5

N.D. Cent. Code §43-15.3-08 ........ 5

Neb. Rev. Stat. §44-4620 ........ 5

S.D. Codified Laws §58-29G-1 ........ 5

S.D. Codified Laws §58-29G-1(3) ........ 5

S.D. Codified Laws §58-29G-1(4) ........ 6

S.D. Codified Laws §58-29G-1(5) ........ 5

S.D. Codified Laws §58-29G-2 ........ 5

S.D. Codified Laws §58-29G-3 ........ 5

**Rule**

Fed. R. App. P. 40(g) ........ 14

**Other Authorities**

AZ.Amicus.Br., *AbbVie, Inc. v. Wrigley*, No. 26-1863
(8th Cir. Aug. 21, 2026)........................................................................ 7

Br., *AbbVie Inc. v. Jackley*, No. 25-cv-3006
(D.S.D. Oct. 1, 2025), Dkt.44 ..................................................................... 10

Br., *AbbVie Inc. v. Wrigley*, No. 25-cv-81
(D.N.D. Oct. 15, 2025), Dkt.29..................................................................... 8

Br., *AstraZeneca Pharms. LP v. Jackley*, No. 25-cv-4156
(D.S.D. Feb. 13, 2026), Dkt.43 .................................................................. 10

Br., *PhRMA v. Jackley*, No. 25-cv-3021
(D.S.D. Feb. 13, 2026), Dkt.42 .................................................................. 10

Br., *PhRMA v. Wrigley*, No. 25-cv-204
(D.N.D. Dec. 17, 2025), Dkt.38 ................................................................ 8, 9

Compl., *Arkansas v. AbbVie, Inc.*, No. 57CV-26-184
(Polk Cnty. Cir. Ct. July 21, 2026) .............................................................. 7

MO.Opp., *Novartis Pharms. Corp. v. Hanaway*, No. 25-1619
(8th Cir. Aug. 21, 2026)..................................................................... 8, 13

Pet., *Novartis Pharms. Corp. v. Hanaway*, No. 25-1619
(8th Cir. July 15, 2026)........................................................................... 7

U.S. Gov't Accountability Off., GAO-18-480, *Drug Discount Program: Federal Oversight of Compliance at 340B Contract Pharmacies Needs Improvement* (2018), https://perma.cc/BK6S-WG5M ........................... 4

U.S.Amicus.Br., *Hanaway*, No. 25-1619
(8th Cir. July 23, 2026)...............................................................8, 11, 13, 16

## INTRODUCTION AND RULE 40(b) STATEMENT

These appeals arise out of a decision resolving several challenges to a South Dakota law that resembles the Missouri law at issue in *Novartis Pharmaceuticals Corp. v. Hanaway*, No. 25-1619 (8th Cir.), where this Court recently called for responses to a pending en banc petition. Like *Hanaway*, this case raises recurring questions of exceptional importance that have divided courts nationwide and directly impact the validity of laws enacted by six of the seven states in this Circuit. These same questions have now reached six circuit courts (the First, Fourth, Fifth, Sixth, Ninth, and Tenth Circuits) and are being litigated in district courts in two other circuits (the Second and Seventh Circuits); the Fourth Circuit likewise recently granted en banc review from a decision authored by Judge Richardson and joined by Judge Rushing that parted ways with *PhRMA v. McClain*, 95 F.4th 1136 (8th Cir. 2024). Appeals are also pending in this Court from Judge Traynor's decision invalidating North Dakota's similar law based on arguments not pressed in *Hanaway*, and litigation continues across the Circuit. Underscoring the nationwide stakes, the United States has filed amicus briefs in every recent case to reach the courts of appeals (and in some district courts). The United States not only agrees with petitioners PhRMA, AbbVie, and AstraZeneca that state laws like the South Dakota law challenged here violate the Supremacy Clause and risk catastrophic damage to federal interests, but supports en banc consideration of these issues.

Petitioners respectfully submit that this Court should grant en banc review of this case alongside en banc rehearing in *Hanaway*. While both cases present some overlapping challenges to the similar laws they involve, several important arguments in this case were not addressed in *Hanaway*. For example, neither the district court nor the panel in *Hanaway* (nor in *McClain*, for that matter) addressed the impact of the Supremacy Clause principles underlying the intergovernmental immunity doctrine. Here, however, petitioners explained that the South Dakota law impermissibly targets and discriminates against only those manufacturers that deal with the federal government. Although that argument is the main basis on which the United States objects to such laws, and was a critical component of a Fourth Circuit panel decision, the state maintained in its *Hanaway* opposition to en banc review that Novartis forfeited that argument.

The district court here also dismissed Takings and Contracts Clause challenges not in *Hanaway* or *McClain* that have survived dismissal and even supported relief elsewhere. Granting en banc review in *Hanaway* alone thus would deprive this Court of the full complement of challenges to state 340B laws and even a full complement of arguments supporting the Supremacy Clause claim that all who have challenged laws like these press. Petitioners accordingly submit that these exceptional issues, only some of which are present in *Hanaway*, warrant en banc review.

## ISSUES MERITING EN BANC CONSIDERATION

Whether the state laws targeting the federal 340B Program that have recently been enacted by most states in this Circuit violate the Supremacy Clause, the Commerce Clause, the Takings Clause, and/or the Contracts Clause.

## STATEMENT OF THE CASE

**A.** Created in 1992, the 340B Program exists to aid healthcare providers who serve a high volume of low-income and rural communities. The program accomplishes that goal by striking a bargain with drug manufacturers: In exchange for receiving reimbursement for their drugs under Medicaid and Medicare Part B, manufacturers must agree to offer their drugs to certain non-profit healthcare providers (known as "covered entities") at steeply reduced prices. *See Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 113-15 (2011).

Because some covered entities do not have an on-site pharmacy, HHS long maintained that a covered entity could contract with one outside pharmacy to dispense 340B-priced drugs on its behalf. In 2010, though, HHS abruptly changed course, purporting to allow covered entities to contract with "an unlimited number of contract pharmacies," whether across the street or across the country. *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 700 (3d Cir. 2023). The number of contract pharmacies soon exploded, increasing "twentyfold." *Id.* Multiple federal studies have found that this explosion dramatically increased the risk of program fraud and

abuse. *See* U.S. Gov't Accountability Off., GAO-18-480, *Drug Discount Program: Federal Oversight of Compliance at 340B Contract Pharmacies Needs Improvement* 37-45 (2018), https://perma.cc/BK6S-WG5M.

Many manufacturers individually responded to those developments by implementing policies setting conditions on their 340B offers to try to reduce fraud and abuse. Under many such policies (including those of AbbVie, AstraZeneca, and many PhRMA members), covered entities seeking to purchase 340B-priced drugs from the manufacturer must designate either an in-house pharmacy or one contract pharmacy for 340B purposes. If the manufacturer receives a 340B purchase order related to a non-designated contract pharmacy, the manufacturer declines the order, and no 340B sale occurs. *See AbbVie Inc. v. Drummond*, 808 F.Supp.3d 1266, 1271-73 (W.D. Okla. 2025). Many policies also condition the sale of drugs at 340B prices on the covered entity's agreement to submit claims data concerning its 340B transactions, which enables manufacturers to identify potential fraud and abuse and bring it to HHS's attention through the dispute-resolution procedures Congress created. *See* 42 U.S.C. §256b(a)(5)(C), (d)(3)(B)(iv); *Drummond*, 808 F.Supp.3d at 1277-78.

Initially, HHS tried to prevent manufacturers from imposing such conditions on their offers to sell 340B-priced drugs to covered entities. Litigation ensued, ending with two courts of appeals holding that the federal 340B statute gives

manufacturers discretion to impose such conditions. *See Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 459-60 (D.C. Cir. 2024); *Sanofi*, 58 F.4th at 703-04. In response, contract pharmacies and their allies in state legislatures successfully lobbied numerous states to enact laws prohibiting manufacturers from imposing contract-pharmacy or claims-data conditions on their 340B offers. Dozens of states around the country have now enacted such laws, including six of the seven states in this Circuit. *See, e.g.*, Ark. Code §23-92-604(c); Minn. Stat. §62J.96; Mo. Rev. Stat. §376.414.2; Neb. Rev. Stat. §44-4620; N.D. Cent. Code §43-15.3-08; S.D. Codified Laws §§58-29G-1 to -3.

Like similar laws enacted elsewhere, South Dakota's law depends entirely on the existence of the 340B Program. The law instructs that "[a] pharmaceutical manufacturer may not, directly or indirectly, deny, restrict, or prohibit the acquisition of a 340B drug or the delivery of a 340B drug to a location that is authorized to receive the drug by a 340B entity or pharmacy." S.D. Codified Laws §58-29G-2. It prohibits manufacturers from requiring "a 340B entity or pharmacy to submit any claim or utilization data, as a condition for allowing the acquisition of a 340B drug by, or delivery of a 340B drug to, a 340B entity." *Id.* §58-29G-3. It defines "340B drug" as "a drug purchased through the 340B drug discount program by a 340B entity." *Id.* §58-29G-1(3). It defines a "340B entity" as "a covered entity as defined in 42 U.S.C. §256b(a)(4)." *Id.* §58-29G-1(5). And it defines the "340B drug

discount program" as "a program that imposes limitations on the prices of drugs purchased by covered entities, in accordance with 42 U.S.C. §256b." *Id.* §58-29G-1(4). By these terms, the law regulates only participation in the federal 340B Program.

**B.** Laws like South Dakota's have sparked litigation across this Circuit and the country, producing conflicting answers to the same recurring questions.

1. In 2021, Arkansas enacted Act 1103, which makes it illegal for a manufacturer to "[p]rohibit a pharmacy from contracting or participating with an entity authorized to participate in 340B drug pricing by denying access to drugs that are manufactured by the pharmaceutical manufacturer." Ark. Code §23-92-604(c). PhRMA challenged Act 1103, arguing that "Section 340B impliedly preempts [it] through field and obstacle preemption." *McClain*, 95 F.4th at 1140-41. This Court rejected the field-preemption argument by relying on Arkansas's express assurance that its law governs only the physical "delivery" of drugs already purchased at the 340B price and not when drugs must be sold at 340B prices, and concluding that "the text of 340B 'is silent about delivery' of drugs to patients." *Id.* at 1143. The Court then rejected PhRMA's obstacle-preemption arguments for much the same reason. *Id.* at 1143-44.

Notwithstanding the position it took in *McClain*, Arkansas has advanced a different reading of its law in state proceedings. The Arkansas Insurance

Commissioner brought an enforcement action under Act 1103 against AstraZeneca based on AstraZeneca's failure to offer "the 340B price" for contract pharmacy sales, and the Commissioner issued a cease-and-desist order directing AstraZeneca to abandon its policy under which "the 340B price is not offered." AZ.Amicus.Br., *AbbVie, Inc. v. Wrigley*, No. 26-1863 (8th Cir. Aug. 21, 2026). In July 2026, Arkansas's Attorney General sued 16 manufacturers (including AbbVie, AstraZeneca, and many PhRMA members), alleging that they violated state law by "denying 340B drug pricing" to covered entities that would not agree to their contract-pharmacy conditions. *See* Compl. ¶¶138, 140, *Arkansas v. AbbVie, Inc.*, No. 57CV-26-184 (Polk Cnty. Cir. Ct. July 21, 2026).

2. More recently, in *Hanaway*, this Court rejected a challenge to Missouri's 340B law. 180 F.4th 1097 (8th Cir. 2026). Novartis's principal argument there was an argument not considered by *McClain*—namely, that Missouri's statute "violates the dormant Commerce Clause." *Id.* at 1107. Novartis also raised the same field-preemption arguments *McClain* rejected, arguing that "*McClain* was wrongly decided and should be overturned," along with additional conflict-preemption arguments. *Id.* at 1113-14. This Court rejected those arguments. *Id.*

Novartis petitioned for rehearing en banc, asking the full Court to reject the panel's Commerce Clause holding, overrule *McClain*, and hold Missouri's law field and conflict preempted. Pet.12-17, *Hanaway*, No. 25-1619 (8th Cir. July 15, 2026).

The United States filed an amicus brief supporting rehearing, focusing principally on the argument that Missouri's law "violates principles of intergovernmental immunity because it impermissibly targets and discriminates against manufacturers that participate in a federal program." U.S.Amicus.Br.6, *Hanaway*, No. 25-1619 (8th Cir. July 23, 2026) ("U.S.Br."). On August 11, this Court called for responses to the petition. Notably, the state's response maintains that Novartis forfeited the intergovernmental-immunity arguments the United States presses. *See* MO.Opp.18-19, *Hanaway*, No. 25-1619 (8th Cir. Aug. 21, 2026) ("MO.Opp.").

**C.** While litigation over Missouri's statute was ongoing, PhRMA, AbbVie, and AstraZeneca challenged state 340B laws more recently enacted by North and South Dakota, pressing arguments *McClain* did not consider (while also preserving arguments *McClain* rejected).

1. In North Dakota, petitioners argued that the state's law materially differs from Arkansas's law as interpreted by *McClain* because it regulates sale, not just delivery—a point with which North Dakota agreed. *See, e.g.*, Br.27-30, *AbbVie Inc. v. Wrigley*, No. 25-cv-81 (D.N.D. Oct. 15, 2025), Dkt.29; Br.3-4, *PhRMA v. Wrigley*, No. 25-cv-204 (D.N.D. Dec. 17, 2025), Dkt.38. Petitioners further argued that, even assuming the laws were the same, laws that expressly and exclusively target the federal 340B Program (which North Dakota's law concededly does) violate the Supremacy Clause because they "'discriminat[e] against the Federal Government or

those with whom it deals' (*e.g.*, contractors)," *United States v. Washington*, 596 U.S. 832, 838 (2022). *See, e.g.*, Br.6-11, *Wrigley*, No. 25-cv-204 (D.N.D. Dec. 17, 2025), Dkt.38. AbbVie, AstraZeneca, and PhRMA all presented various challenges not fully addressed in either *McClain* or *Hanaway*. *See AbbVie Inc. v. Wrigley*, 832 F.Supp.3d 920, 940-43 (D.N.D. 2026).

Judge Traynor held that North Dakota's law is preempted and granted summary judgment to PhRMA and AbbVie. *Id.* at 943-44. Drawing on well-settled Supremacy Clause principles that foreclose state efforts to target and single out federal relationships, partners, or program participants for special, disfavored treatment, Judge Traynor concluded that North Dakota impermissibly claimed a role in setting the terms on which manufacturers participate in 340B. *Id.* at 937-39. He rejected the state's reliance on *McClain* because North Dakota's law materially differs from Arkansas's law as interpreted by *McClain*, and because *McClain* did not address the distinct legal theory underlying his preemption analysis. *Id.* at 934-37. Judge Traynor also granted summary judgment to AbbVie and PhRMA on their Commerce Clause claims, *id.* at 940, and denied the state's motion for judgment on the pleadings in AstraZeneca's case, finding that AstraZeneca plausibly alleged that North Dakota's law violates the Takings and Contracts Clauses. *Id.* at 940-43.

North Dakota appealed and moved for a stay, arguing that *McClain* and *Hanaway* foreclose the distinct Supremacy Clause theories PhRMA and AbbVie

advanced. PhRMA and AbbVie responded, echoing Judge Traynor's reasoning that those decisions do not foreclose their arguments because neither case considered (let alone decided) them. But this Court, in an unsigned order, nonetheless granted a stay.

2. In this case, petitioners likewise argued that South Dakota's statute materially differs from Arkansas's law, *see, e.g.*, Br.27-28, *AbbVie Inc. v. Jackley*, No. 25-cv-3006 (D.S.D. Oct. 1, 2025), Dkt.44, and advanced arguments based on Supremacy Clause principles that neither *McClain* nor *Hanaway* considered, *see, e.g.*, Br.13-17, *AstraZeneca Pharms. LP v. Jackley*, No. 25-cv-4156 (D.S.D. Feb. 13, 2026), Dkt.43; Br.17-27, *PhRMA v. Jackley*, No. 25-cv-3021 (D.S.D. Feb. 13, 2026), Dkt.42. AbbVie and AstraZeneca also alleged that South Dakota's law "violates the Takings Clause because it results in a forced transfer of private property from the manufacturers to the pharmacies without just compensation." *AbbVie Inc. v. Jackley*, 2026 WL 2280929, at *25 (D.S.D. Aug. 7, 2026). And AstraZeneca alleged that the law violates the Contracts Clause by substantially impairing a contractual relationship between manufacturers and the federal government. *Id.* at *35-36.

Unlike in North Dakota, the district court here rejected those arguments and dismissed all three cases. *Id.* at *37-38. Petitioners all noticed appeals.

## REASONS FOR GRANTING INITIAL HEARING EN BANC

### I. This Case Presents Exceptionally Important, Recurring Issues.

This case presents recurring questions of exceptional importance that have divided courts both within this Circuit and across the country. *Hanaway* alone fails to present an opportunity to consider all of the challenges to state 340B laws (or even all of the arguments in support of the core Supremacy Clause claim). Because this case undoubtedly *does* present that opportunity, it is the rare case in which proceeding directly to en banc review would conserve judicial resources by ensuring that the Court can provide much-needed guidance on *all* questions affecting the validity of laws that have now been enacted by nearly every state in this Circuit.

#### A. These Important Questions Have Divided Courts in this Circuit and Across the Country.

As the United States emphasized in its amicus brief supporting rehearing in *Hanaway*, the constitutional questions here have "nationwide stakes." U.S.Br.12. More than 20 states, including six in this Circuit, have enacted laws that apply only to manufacturers that participate in the 340B Program. As the United States has warned, state laws that dictate how manufacturers satisfy their obligations under 340B risk discouraging Medicare and Medicaid participation, with potentially disastrous consequences for healthcare across the country. U.S.Br.12-13. The consequences can extend well beyond those critical healthcare programs if states can impose burdens on federal program participants. U.S.Br.10-11.

Those exceptionally important questions have sharply divided courts within this Circuit and across the country. Courts are split on the outcome and interpretation of *McClain*. While this Court has upheld two state laws regulating 340B pricing, the Districts of North Dakota and South Dakota recently reached opposite conclusions on similar Supremacy Clause challenges. *Compare Wrigley*, 832 F.Supp.3d 920, *with Jackley*, 2026 WL 2280929. And the Eastern District of Arkansas allowed preemption arguments not addressed in *McClain* to proceed, determining that they are not inconsistent with *McClain*. *See AstraZeneca Pharms. LP v. McClain*, 2025 WL 4092197 (E.D. Ark. Sept. 30, 2025). Elsewhere, some district courts in the Fourth and Tenth Circuits have enjoined similar state laws, while others have upheld them. Although the Fifth Circuit rejected challenges to two such laws (one after panel rehearing), *see AbbVie, Inc. v. Murrill*, 180 F.4th 747 (5th Cir. 2026); *AbbVie, Inc. v. Fitch*, 152 F.4th 635 (5th Cir. 2025), a Fourth Circuit panel held that Maryland's and West Virginia's laws likely violate the Supremacy Clause, *see PhRMA v. McCuskey*, 171 F.4th 675 (4th Cir. 2026). The Fourth Circuit has since granted rehearing en banc, 176 F.4th 830 (4th Cir. 2026), underscoring the significance of the Supremacy Clause questions and the value of full-court review.

The Takings and Contracts Clause questions, neither of which was raised nor addressed in *McClain* or *Hanaway*, have also divided courts. The district court below dismissed both claims, but acknowledged that other district courts—including

one in Arkansas, *see AstraZeneca*, 2025 WL 4092197, along with courts in North Dakota, Utah, Oklahoma, and Hawaii—have held that manufacturers adequately alleged that similar state laws violate the Takings Clause. *See Jackley*, 2026 WL 2280929, at *26. And two district courts in this Circuit have held that AstraZeneca adequately alleged that state 340B laws violate the Contracts Clause by impairing contracts with the federal government. *See AstraZeneca v. Bailey*, 2025 WL 644285, at *3-4 (W.D. Mo. Feb. 27, 2025); *AstraZeneca*, 2025 WL 4092197, at *7-8.

Appeals challenging similar laws and raising arguments unaddressed in *McClain* and *Hanaway* are now pending in the First, Fifth, Sixth, Ninth, and Tenth Circuits, creating a risk of further conflicts. That is especially consequential in a federal program whose governing obligations should not vary from state to state. *See Astra*, 563 U.S. at 120.

**B. This Case Provides an Ideal Vehicle for Full Court Review.**

Given the disagreement among the courts below and the importance of the issues at stake, the Court should grant en banc review. If the Court grants rehearing en banc in *Hanaway*, this case would be an ideal companion. The United States urges en banc review in *Hanaway* on the ground that Missouri's law violates the intergovernmental-immunity doctrine. U.S.Br.5-9, 11. In opposing en banc review, Missouri responded that "Novartis has never pressed" an intergovernmental-immunity argument. MO.Opp.18-19. No such charge could be leveled here, as

intergovernmental-immunity arguments not only were fully presented, but were squarely passed upon below. *See Jackley*, 2026 WL 2280929, at *23-25. Considering this case alongside *Hanaway* thus would eliminate any concerns that party-presentation principles may prevent the Court from considering those important arguments. It would also eliminate piecemeal review of the remaining challenges to the laws enacted by Nebraska, North Dakota, South Dakota, Arkansas, and Missouri. And it would prevent casting doubt on any potentially meritorious arguments not presented by Novartis.[1]

Conversely, if *McClain* and *Hanaway* are interpreted to foreclose arguments not expressly considered, that further underscores the need for initial en banc review. First, it would save both the parties and the Court from addressing arguments a panel may think it is bound to reject. Second, *McClain* and *Hanaway*, properly understood, do not foreclose petitioners' claims. That said, those decisions are wrong even on their own terms. They characterized Missouri's and Arkansas's 340B laws as regulations of "the practice of pharmacy," even though those laws impose no requirements on pharmacies. *McClain*, 95 F.4th at 1143. And they misunderstood those laws to apply only to the "physical delivery" of discounted

[1] For that reason, the Court may also wish to consider ordering initial hearing en banc sua sponte in the consolidated North Dakota appeals and considering them alongside this case and *Hanaway*. *See* Fed. R. App. P. 40(g) ("On its own …, a court may hear an appeal or other proceeding initially en banc.").

drugs after they are purchased, not to the "price" of those drugs. As Arkansas's post-*McClain* enforcement efforts show, even the state no longer shares that view. Moreover, HHS has made clear its view that disputes about 340B offer terms belong in the exclusive federal Administrative Dispute Resolution ("ADR") forum that HHS oversees, as *Astra* makes clear. *But see, e.g.*, *McClain*, 95 F.4th at 1142 (relying on out-of-date assumptions about maintenance of title, and not addressing the current ADR rule). And on the Commerce Clause, *Hanaway* conflicts with this Court's decision in *Association for Accessible Medicines v. Ellison*, 140 F.4th 957 (8th Cir. 2025). The issues those cases did address thus merit en banc review in their own right. But granting this case alongside *Hanaway* would ensure that the Court is not limited to those issues.

That is a considerable benefit, as the Supremacy Clause principles those decisions did not address were important for two members of the Fourth Circuit and for Judge Traynor in the North Dakota case. *See McCuskey*, 171 F.4th at 689-90; *Wrigley*, 832 F.Supp.3d at 938-39. As the Supreme Court explained in invoking those principles to unanimously invalidate a state law, the Supremacy Clause itself forecloses efforts to "interfer[e] with or control[] the operations of the Federal Government" by singling out for special burdens "those with whom it deals." *Washington*, 596 U.S. at 838. That is precisely what laws like South Dakota's do: They impose special restrictions *only* on manufacturers who participate in the 340B

Program, and *only* on their conduct under the Program, for the avowed purpose of expanding the circumstances in which they must sell their drugs to federally designated covered entities at federally set 340B prices.

It is doubtful under *any* circuit's precedent whether such laws are permissible, but it is especially doubtful under this Circuit's precedent given the Court's decision in *Forest Park II v. Hadley*, 336 F.3d 724 (8th Cir. 2003)—a case neither *McClain* nor *Hanaway* addressed. In *Forest Park II*, Minnesota attempted to dictate the terms of participation in a federal spending-power program. *See id.* at 728-30. There, as here, a participant in a federal-private partnership was "prohibited by a state law from taking [an] action that the federal government has otherwise authorized." *Id.* at 731-32. Indeed, there as here, that was all Minnesota's law did: It operated *exclusively* to "regulate[] or restrict[] the actions of" private participants in a "federal program." *Id.* at 732. The Court invalidated the law under the Supremacy Clause, concluding that "state statutes may not interfere with the implementation of a federal program by a federal agency." *Id.*; *see also* U.S.Br.6-7.[2] Because the same principle should compel the same conclusion here, the Court would be best served by an en

[2] This Court "also" held in the alternative that Minnesota's law was statutorily "preempt[ed]," *Forest Park II*, 336 F.3d at 733, but it did so only *after* holding that the Supremacy Clause itself displaced the state's law, *id.* at 731-32.

banc proceeding that includes a case in which that argument was indisputably pressed and passed upon.

Granting review here alongside *Hanaway* would also ensure that the Court can consider important Takings and Contracts Clause claims. These state laws, properly understood, impermissibly compel manufacturers to transfer their drugs at deeply reduced prices, on terms that federal law does not require and that manufacturers would reject. And they rewrite the terms of manufacturers' federal agreements with the federal government that memorialize their participation in the federal 340B Program. District courts in this Circuit have split on allegations that state 340B laws violate these two constitutional provisions, and this Court will inevitably need to weigh in on them. Deciding those issues now, en banc, would promote judicial efficiency.

## CONCLUSION

This Court should grant initial hearing en banc.

Respectfully submitted,


/s/ Matthew S. Owen
MATTHEW S. OWEN
RUSSELL B. BALIKIAN
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, DC 20036
(202) 955-8500
mowen@gibsondunn.com
rbalikian@gibsondunn.com

*Counsel for AbbVie, Inc. et al.*

/s/ Allon Kedem
ALLON KEDEM
JEFFREY L. HANDWERKER
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
allon.kedem@arnoldporter.com
jeffrey.handwerker@arnoldporter.com

*Counsel for AstraZeneca Pharmaceuticals, LP*

/s/ Erin E. Murphy
ERIN E. MURPHY
MATTHEW D. ROWEN
PHILIP HAMMERSLEY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Pharmaceutical Research and Manufacturers of America*


August 28, 2026

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A) and Eighth Circuit Rule 35A because it contains 3,822 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Times New Roman 14-point font.

The electronic version of this petition has been scanned for viruses and has been found to be virus free.

/s/Erin E. Murphy
Erin E. Murphy

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/Erin E. Murphy
Erin E. Murphy